UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN MARSHALL TOMPKINS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>S. THOMAS, et al.,<br><br>　　　　Defendants. | Case No. 1:22-cv-01415-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED, THAT THE DEFENDANTS' REQUEST FOR JUDICIAL NOTICE BE GRANTED, AND THAT PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE BE GRANTED<br><br>(ECF Nos. 27, 28, 38).<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS |

　　　　Plaintiff Shawn Tompkins is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action. (ECF Nos. 1, 8). This case proceeds on Plaintiff's Eighth Amendment excessive-force claims against Defendants Thomas, Layshot, Muro, Salazar, Mitchell, Velazquez, and Gonzalez based on an incident in which these Defendants allegedly assaulted Plaintiff while he was confined at Wasco State Prison-Reception Center.

　　　　On March 13, 2023, Defendants filed a motion to dismiss, arguing that the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Plaintiff from pursuing this case because success on the merits would necessarily imply the invalidity of his state court criminal conviction and his related guilty finding for a prison Rules Violation Report (RVR). (ECF No. 27).

　　　　After review of the parties' briefs, the Court will recommend that Defendants' motion

1

to dismiss be granted. (ECF No. 27). Additionally, the Court will recommend that Defendants' request for judicial notice be granted, and that Plaintiff's request for judicial notice be granted. (ECF Nos. 28, 38).

I.     **SUMMARY OF PLAINTIFF'S COMPLAINT**

Plaintiff's complaint alleges as follows.[1] While Plaintiff was in his assigned cell, which was boarded (papered) up, Defendant Thomas, a sergeant, came to Plaintiff's cell with two other correctional officers. Defendant Thomas stated, "Are y'all ready because y'all don't look ready?" Plaintiff's cell door was then opened, and Plaintiff was struck in the face and pulled out onto the tier. Defendant Thomas then began striking Plaintiff with closed fists. Plaintiff was then slammed to the ground. Defendant Thomas then began kicking Plaintiff and stomping on him. Defendant Thomas then grabbed Plaintiff's right arm and twisted it until Plaintiff yelled in pain. Defendant Thomas then told the other correctional officers to stop hitting Plaintiff in his face and to instead only hit him in his body. The other correctional officers ignored this command.

As to Defendant Layshot, a correctional officer, Plaintiff alleges that, when his cell door opened, Defendant Layshot punched Plaintiff in the face. Defendant Layshot then grabbed Plaintiff by his shirt and pulled him out of his cell, all while striking Plaintiff in his face with a closed fist. Defendant Layshot continued striking Plaintiff while Plaintiff begged for help. Defendant Layshot then slammed Plaintiff to the ground and got on Plaintiff's back, continuously striking Plaintiff on his head. Defendant Layshot then handcuffed Plaintiff. After that Defendant Layshot continued striking Plaintiff while calling him a "bitch" and "motherfucker." Other personnel placed leg restraints on Plaintiff's ankles while Defendant Layshot continued to strike Plaintiff. As Defendant Layshot got off Plaintiff's back, he twisted Plaintiff's right arm, causing extreme pain and bringing Plaintiff to his feet. Defendant Layshot then escorted Plaintiff out of the building while twisting his right hand/wrist behind his back. He also repeatedly struck Plaintiff. Defendant Layshot slammed Plaintiff into a wheelchair.

---

[1] For readability, minor alterations, such as changing capitalization and correcting misspellings, have been made to some of Plaintiff's quotations without indicating each change.

1  Plaintiff yelled for help and for Defendant Layshot to stop, but help never came and Defendant
2  Layshot did not stop. While Plaintiff was being escorted in a wheelchair to a cage by the
3  program office, Defendant Layshot grabbed Plaintiff's shirt from behind, yanked it, and held it
4  until Plaintiff lost consciousness. Defendant Layshot continued to strike Plaintiff.

5  As to Defendant Muro, a correctional officer, Plaintiff alleges that after he was
6  handcuffed and in leg restraints, Defendant Muro came and began kicking and stomping on
7  Plaintiff, while calling him a "bitch." While Plaintiff was being escorted out of the building,
8  Defendant Muro continuously struck him. While Defendant Layshot was ripping the clothes off
9  his body, Defendant Muro continued to strike Plaintiff in his face, ignoring Defendant
10 Thomas's command to stop hitting Plaintiff in his face.

11 As to Defendant Salazar, a correctional officer, Plaintiff alleges that as Defendant
12 Layshot pulled Plaintiff out of his cell, Defendant Salazar began hitting Plaintiff. When
13 Plaintiff was slammed to the ground, Defendant Salazar got his baton and hit Plaintiff a few
14 times on his right ear. Plaintiff turned his head, and Defendant Salazar then hit the left side of
15 Plaintiff's head, by his ear. Defendant Salazar then applied a lot of pressure to the back of
16 Plaintiff's left ear, causing him to move his head. Defendant Salazar then struck Plaintiff with
17 his closed fist on the left side of Plaintiff's head. Defendant Salazar then got his baton, put it on
18 Plaintiff's lips, and said, "Suck on this, bitch!" Plaintiff moved his face away, then Defendant
19 Salazar put his boot on Plaintiff's lips, said, "Kiss my boot," and laughed. All of this happened
20 while Plaintiff's hands were cuffed behind his back and he was in ankle restraints.

21 As to Defendants Mitchell and Gonzalez, correctional officers, Plaintiff alleges that
22 while he was on the ground with his hands cuffed behind his back, Defendants Mitchell and
23 Gonzalez placed leg restraints on Plaintiff while striking him. After the leg restraints were fully
24 on Plaintiff's ankles, Defendants Mitchell and Gonzalez bent Plaintiff's legs upward, behind
25 his back. Defendants Mitchell and Gonzalez then let Defendant Velazquez strike Plaintiff in the
26 groin area approximately three times. Plaintiff was then brought to his feet and escorted out of
27 the block by defendants Layshot and Muro.

28 As to Defendant Velazquez, a correctional officer, Plaintiff alleges that while he was in

his assigned cell, Defendant Velazquez told the nurse to leave the building. The nurse said that Plaintiff was boarded up. Defendant Velazquez told her to log it and leave. Defendant Velazquez ushered the nurse out of the building. While Plaintiff was in full restraints, Defendant Velazquez told defendants Mitchell and Gonzalez to raise Plaintiff's legs upward, behind his back. After they did so, Defendant Velazquez proceeded to strike Plaintiff in the groin area approximately three times.

Based on these allegations, the Court found "that Plaintiff's Eighth Amendment excessive-force claims against defendants Thomas, Layshot, Muro, Salazar, Mitchell, Velazquez, and Gonzalez should proceed past screening." (ECF No. 9, p. 8).

## II. LEGAL STANDARDS

### A. Motion to Dismiss

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Hosp. Bldg. Co. v. Rex Hosp. Trustees*, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. *See Iqbal*, 556 U.S. at 679. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to

offer evidence to support the claims." *Scheuer*, 416 U.S. at 236 (1974).

The scope of review on a Rule 12(b)(6) motion to dismiss is ordinarily limited to the contents of the complaint. Fed. R. Civ. P. 12(d); *Van Buskirk v. Cable News Network*, 284 F.3d 977, 980 (9th Cir. 2002) ("Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss."). If a court considers evidence outside of the complaint when ruling on a Rule 12(b)(6) motion, "it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). However, exceptions exist for "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice," which a court may properly consider "without converting the motion to dismiss into a motion for summary judgment." *Id.* at 907-08 (citations omitted).

### B. Favorable Termination Rule

In *Heck*, the United States Supreme Court held that to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must prove that the conviction or sentence was reversed, expunged, or otherwise invalidated. 512 U.S. at 486-87. This "favorable termination rule" preserves the rule that federal challenges, which, if successful, would necessarily imply the invalidity of confinement or its duration, must be brought by way of petition for writ of habeas corpus, after exhausting appropriate avenues of relief. *Muhammad v. Close*, 540 U.S. 749, 750-751 (2004).

Accordingly, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82(2005). The favorable termination rule also applies to prison disciplinary proceedings. *See Nettles v. Grounds*, 830 F.3d 922, 927-29 (9th Cir. 2016) (discussing Supreme Court authority on favorable termination rule in the prison disciplinary context).

\\\

5

### III. SUMMARY OF THE PARTIES' ARGUMENTS

Defendants contend that the incident described in the complaint happened on March 27, 2020, and it led to various criminal charges against Plaintiff, with Plaintiff ultimately pleading no contest in the Kern County Superior Court to a violation of California Penal Code § 69 against Defendant Salazar in exchange for dismissal of the rest of the counts. (ECF No. 27-1, p. 3); *see* Cal. Penal Code § 69 ("Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment."). Further, "[a]s part of the plea, Plaintiff stipulated to the 'factual basis on the probable cause statement and the reports in discovery.'" (ECF No. 27-1, p. 4). The discovery packet at issue includes a copy of an incident report describing what happened on March 27, 2020; pertinent here, the report describes Plaintiff as the aggressor and Defendants as the victims. (*Id.* at 4-5). Ultimately, Plaintiff agreed to a 16-month sentence as part of his plea. (*Id.* at 4).

Defendants also state that "Plaintiff was found guilty [in a RVR] of battery on a peace officer for the events [at issue in the complaint]" and this "RVR is based on the same incident report . . . and the same set of stipulated facts in [Plaintiff's criminal case.]" (*Id.* at 6). He was "assessed a loss of 150 days of credits." (*Id.*). Defendants request that the Court take judicial notice of documents from the criminal case and related RVR, which request the Court discusses below.

Based on the criminal and RVR proceedings, Defendants argue as follows:

> This case would, in effect, re-litigate Plaintiff's conviction for the March 27, 2020 attack, on which he was found guilty following the RVR hearing, and which he pleaded no contest in Kern County, stipulating to the entirety of the incident reports and facts that gave rise to the charges. (*See* RJN, Exs. A-4, A-5 at 5:9-13, A-3, B-1.) Plaintiff's stipulation to the facts giving rise to the charges equates to a full admission to the facts set forth in the incident report. (RJN, Exs. A-5 at 5:9-13, A-3.) The reports, which Plaintiff stipulated to, reveal that

>Plaintiff was the true aggressor, attacking, punching, and kicking multiple staff members, while staff used only the force necessary to stop Plaintiff's attack. (*See* RJN Ex. A-3, generally.) No staff members punched Plaintiff or used excessive force on him as he alleges in his complaint. (*Id.*) In other words, the Defendants were the true victims on March 27, 2020. For the crime committed, Plaintiff received an additional 16-month sentence.
>
>The Senior Hearing Officer at the RVR hearing took into account Plaintiff's statement at the hearing that he acted in self-defense and weighed this with Plaintiff's admission that he "cracked him (meaning Officer Layshot) good," the officers' reports, and the injuries the officers sustained. (*See* RJN, Ex. B-1 at 9-11.) As a result, he was found guilty and assessed a loss of 150 credits and self-defense was not a mitigating factor. (RJN, Ex. B-1 at 9-12.)
>
>*Heck* clearly forbids such a case from going forward. The *Heck* bar thus lay squarely in front of Plaintiff's allegations and prevents him from stating a cognizable excessive force claim against Defendants. A successful §1983 action here would directly negate not only the RVR, but, Plaintiff's criminal plea and stipulation to the facts of the incident reports. Plaintiff is barred from pursuing his excessive force claim against those Defendants under section 1983 because a favorable termination on his excessive force claim against them in this action would necessarily render his felony conviction invalid. *Ramirez*, 334 F.3d at 856; *Heck,* 512 U.S. at 486-87; *Edwards,* 520 U.S. at 643.
>
>Therefore, it is clear from the judicially noticeable documents from Kern County Superior Court and CDCR that Plaintiff is *Heck-* barred from this action. Accordingly, Defendants' motion should be granted and this case dismissed.

(*Id.* at 11).

Plaintiff opposes the motion to dismiss. (ECF No. 37). First, he argues that his "no-contest plea is not the same as a guilty plea" for purposes of applying *Heck*. (*Id.* at 5). He admits to stipulating to the allegations in the criminal complaint but contends that "the stipulation is to not contest, admit nor deny, the criminal allegations within the criminal complaint." (*Id.* at 6). He asserts that the no-contest plea was "for sentencing purposes only." (*Id.* at 5).

Second, Plaintiff states that, because he "is serving an indeterminate sentence of 25 yrs. to life for a prior criminal conviction," his guilt finding for the RVR and loss of 150 days of credit does not necessarily affect the duration of his confinement. (*Id.* at 7, 14). Lastly, Plaintiff opposes Defendants' request for judicial notice and he submits his own request for judicial

7

1    notice of prison grievance documents he filed concerning the incident in the complaint. (ECF
2    No. 38).
3         In their reply, Defendants argue that case authority establishes that *Heck* applies to no-
4    contest pleas. (ECF No. 40, pp. 2-3). Further, they agree that Plaintiff is serving a sentence of
5    25 years to life but argue that the length of his sentence is nonetheless affected. (*Id.* at 4-5).
6    Lastly, Defendants oppose Plaintiff's request for judicial notice.

7    **IV.    REQUESTS FOR JUDICIAL NOTICE**

8         Defendants request that the Court take judicial notice of documents from Plaintiff's
9    state court criminal case and the RVR proceedings, including the criminal complaint, the
10   incident report, sentencing transcript, and the RVR. (ECF No. 28).
11        While Plaintiff objects to the request for judicial notice of his criminal case documents,
12   his objection appears to be mainly based on his argument that his no-contest plea cannot be
13   considered for *Heck* purposes, which argument the Court rejects as discussed below.
14   Importantly, Plaintiff concedes that he "stipulated to the criminal allegations." (ECF No. 37, p.
15   5). Plaintiff also opposes the Court taking judicial notice of the RVR-related documents,
16   arguing that he disputes some of the underlying allegations in them.
17        Plaintiff requests that the Court take judicial notice of grievance documents he filed,
18   such as a 602 form, related to the incident, in which he generally complained about the use of
19   excessive force from Defendants. (ECF No. 38). Defendants argue that they dispute Plaintiff's
20   allegations in these documents, and thus the Court should not take judicial notice of them.
21   (ECF No. 40, pp. 5-6).
22        Under Federal Rule of Evidence 201, courts may take judicial notice of facts "not
23   subject to reasonable dispute" that are either "(1) generally known within the trial court's
24   territorial jurisdiction; or (2) can be accurately and readily determined from sources whose
25   accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see U.S. ex rel. Robinson*
26   *Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (a court "may
27   take notice of proceedings in other courts, both within and without the federal judicial system,
28   if those proceedings have a direct relation to matters at issue" (citation omitted)); *see also*

*Bykov v. Rosen*, 703 F. App'x 484, 487 (9th Cir. 2017) (finding that the district court did not abuse its discretion by taking judicial notice of state court proceedings).

The Court concludes that taking judicial notice of the state court criminal documents is proper. While Plaintiff argues that his no-contest plea is irrelevant for *Heck* purposes, which argument the Court rejects below, he does not contest the accuracy of the relevant criminal documents and he in fact agrees that he "stipulated to the criminal allegations." (ECF No. 37, p. 5); *see Arellano v. Haskins*, No. 1:17-CV-01235-NONE-JLT, 2021 WL 1193814, at *6 (E.D. Cal. Mar. 30, 2021) (taking judicial notice of a state court docket and certified copy of the transcript from the plaintiff's state court change of plea hearing).

As for the RVR documents, a court may take judicial notice of the official acts and public records of state agencies "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 959 (9th Cir. 2013) (relying on opinion letters from the California Division of Labor Standards Enforcement); *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 824 n.3 (9th Cir. 2011) ("To the extent our opinion references any of the materials, we grant [USSA's] request[ ] for judicial notice.").

Federal courts have recognized that RVRs fall within the category of public records subject to judicial notice. *See, e.g., Jones v. Harrington*, No. 1:10-CV-00212-AWI-GSA, 2010 WL 3341597, at *1 (E.D. Cal. Aug. 24, 2010) (taking judicial notice of RVR in habeas proceeding); *Givens v. Miller*, No. 15CV2877-GPC(PCL), 2017 WL 840658, at *2 (S.D. Cal. Mar. 3, 2017) (taking judicial notice of two dispositions of disciplinary hearings for two separate RVRs), *aff'd*, 708 F. App'x 354 (9th Cir. 2017).

Accordingly, the Court will recommend that judicial notice be taken of the RVR documents for the purpose of adjudicating this motion regarding whether Plaintiff's complaint is subject to the *Heck* bar, and not for accepting the accuracy of the facts set forth in those documents. Likewise for the grievance documents submitted by Plaintiff, the Court will recommend that they be judicially noticed, not for accepting the truth of the allegations therein,

but only to the extent that such documents are relevant to the *Heck* issue. Accordingly, the Court recommends granting both parties' requests for judicial notice.

## V.  ANALYSIS

### A. No-contest Plea

Turning to the merits, the Court begins with the parties' dispute as to whether Plaintiff's no-contest plea implicates *Heck*.

While Plaintiff concedes that he stipulated to the allegations in the criminal complaint, he contends that his no-contest plea renders this stipulation inapplicable in the context of *Heck*. (ECF No. 37, pp. 5-6). Defendants argue that *Heck* extends to no-contest pleas. (ECF No. 40, pp. 2-3). The Court agrees with Defendants.

Importantly, the assigned District Judge's recent opinion in another case reasoned that *Heck* extends to factual stipulations where there is a no-contest plea, addressing the relevant case authority on this issue as follows:

> . . . Defendants point to the Ninth Circuit's unpublished decision in, *Briseno v. City of W. Covina*, 2023 WL 2400833, at *1 (9th Cir. Mar. 8, 2023) . . . . There, the Ninth Circuit considered an appeal from a 2021 decision out of the Central District of California. *Briseno v. City of W. Covina*, No. CV 20-2986 MRW, 2021 WL 6690564, at *1 (C.D. Cal. Dec. 23, 2021). Briseno pled no contest to a burglary charge and a charge of resisting arrest. *Id*. at *1. During his plea colloquy, Briseno agreed to stipulate to a factual basis for the plea based upon a police report, which the district court summarized and considered in evaluating the applicability of *Heck* to Briseno's subsequent civil rights action. *Id.* at *1-*3. The district court ultimately found that the factual basis for the plea established that Briseno resisted arrest at numerous points during the incident in question and therefore that his acknowledgement of guilt necessarily meant that the police use of force "through to the end of his resistance" was lawful. *Id*. at *4. Given these facts, the district court found Briseno's excessive force claims barred by *Heck*. *Id.* ("Heck bars this later civil rights action in which he alleges that the same police conduct was unlawful."). . . .
>
> Without specifically discussing the key issue—whether facts stipulated to during the process of a no contest plea should be considered in a subsequent *Heck* analysis—the Ninth Circuit affirmed. *Briseno*, 2023 WL 2400833, at *1. By affirming, the Ninth Circuit implicitly approved of the district court's treatment of the factual record and, relatedly, the source of that factual record, as no alternative rationale for applying *Heck* was provided by the district court. More specifically, the Ninth Circuit explained that Briseno's excessive force claim

was barred by *Heck* because it was "predicated on allegedly unlawful actions by the officer *at the same time* as the plaintiff's conduct that resulted in his [resisting arrest under Cal. Penal Code] § 148(a)(1) conviction." 2023 WL 2400833, at *1 (*citing Sanders v. City of Pittsburg*, 14 F.4th 968, 971 (9th Cir. 2021). Without the information from the police report, there would have been no way to evaluate whether the civil claims overlapped with the timeline that formed the basis for the § 148(a)(1) conviction.

. . . .

. . . *Briseno* appears to be the first time the Ninth Circuit has ruled on an appeal from a case that directly addressed the central issue in contention here: whether factual material considered as part of the factual basis for a no contest plea can be considered by a court applying *Heck* to a subsequent civil lawsuit. . . . In addition, the district court's decision in *Briseno* is aligned with other authority. Notably, several district courts have adopted the argument that use of a no contest plea is not a use that is "against the defendant" within the meaning of Rule 410. *See Galvan v. City of La Habra*, No. SACV 12-2103-JGB (RNBx), 2014 WL 1370747, at *9–12 (C.D. Cal. Apr. 8, 2014) ("The weight of authority in this Circuit, however, supports the proposition that the use of a nolo contendere plea in a later civil action is permissible as it is not being used 'against the defendant' within the meaning of FRE 410.") (*citing Walker v. Schaeffer*, 854 F.2d 138, 143 (6th Cir. 1988) (indicating Rule 410 was intended to bar "the use of a nolo contendere plea against the pleader in a subsequent civil or criminal action in which he is the *defendant*")(emphasis in original)); *Wetter v. City of Napa*, No. 07–04583, 2008 WL 62274, at *3 (N.D. Cal. Jan. 4, 2008) (rejecting argument that Rule 410's "against the defendant" language precludes a nolo plea from being considered in the *Heck* analysis, concluding instead: "The purpose of the *Heck* doctrine is to ensure that valid state criminal convictions and sentences are not, in effect, retroactively contradicted by subsequent federal civil actions. That purpose applies to any conviction whether by guilty plea or nolo contendere plea. Once the conviction is reduced to judgment, we do not look behind the judgment to identify the avenue lending to the judgment of conviction."); *Whitehurst v. Kauffmann*, No. 2:14-CV-4320-JVS (GJS), 2017 WL 761254, at *9 (C.D. Cal. Jan. 4, 2017), *report and recommendation adopted*, 2017 WL 754543 (C.D. Cal. Feb. 27, 2017) (citing with approval *Galvan* and *Wetter*).

*King v. Villegas*, No. 1:17-CV-00676-JLT-EPG (PC), 2023 WL 4627687, at *6–7 (E.D. Cal. July 19, 2023). Ultimately, "the Court [found] it appropriate to consider [the factual record concerning Plaintiff's no contest plea] in applying *Heck* . . . ."

Based on the above discussion, the Court determines the *Heck* bar doctrine set forth above applies to Plaintiff's no contest plea.

\\\

**B. Application of *Heck* to Criminal Conviction**

*Heck* applies to claims that would render "a conviction or sentence invalid." *Heck*, 512 U.S. at 486. And "*Heck* . . . says that if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996). Here, the facts from his underlying criminal conviction are fundamentally inconsistent with his excessive-force claims and thus his case must be dismissed.

The statute that Plaintiff pled no-contest to, California Penal Code § 69, provides that "[e]very person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty" is guilty of violation of the statute. "In California, the lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying, or obstructing a peace officer." *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005); *see People v. Southard*, 62 Cal. App. 5th 424, 435 (2021) ("[I]f the arrest is unlawful, the defendant may not be convicted of violating of section 69 . . . .").

According to the criminal complaint and guilty plea, Plaintiff pleaded no-contest as to only one count of violating California Penal Code § 69 as to Defendant Salazar. (ECF No. 28, pp. 30-31, 99). However, Plaintiff also stipulated to the factual basis of "the reports in discovery," which include an incident report prepared by prison officials. (*Id.* at 111). This incident report addresses the use-of-force incident as to all Defendants—Thomas, Layshot, Muro, Salazar, Mitchell, Velazquez, and Gonzalez. Among other things, it specifies that Defendants Thomas, Layshot, Salazar, and Mitchell only used "Physical Strengths and Holds" during the incident. (*Id.* at 43, 44, 46, 50). As to Muro, Valazquez,[2] and Gonzalez the report indicates that they did not use any force (*i.e.*, "Not Applicable) against Plaintiff during the incident. (*Id.* at 45, 47, 48).

---

[2] Valazquez recently changed her name and is referred to as "Ball" in some portions of the record. The Court uses Valazquez for consistency.

Further, the incident report contains various narratives of what happened from the perspectives of the prison officials involved. Generally, the narratives state that Plaintiff was the initial aggressor against prison staff; that staff used reasonable force, such as restraining Plaintiff to stop his attacks, and that Plaintiff injured several staff. The following narrative is a typical description of the incident:

> On March 27, 2020, staff reported to Facility B building 2 to escort inmate TOMPKINS BL7280 out of the unit in order to transport him to a Mental Health Crisis Bed for homicidal ideations. As staff opened the cell door, with no provocation, inmate TOMPKINS swung his fist at Officer Layshot striking him in the face. Officer Layshot regained his balance as inmate TOMPKINS continued advancing, swinging his fists at Officer Layshot's face. Officer Layshot was able to prevent inmate TOMPKINS from striking him and gained control of his right shoulder with his right hand. Officer Salazar grabbed inmate TOMPKINS' left shoulder and upper back with both hands. Utilizing physical force, Officers Salazar and Layshot pulled Inmate TOMKINS down into a prone position causing him to land on his stomach. Inmate TOMPKINS tucked both his hands underneath his body as he kicked and thrashed his body from side to side to prevent officers from placing him in restraints. Sergeant S. Thomas grabbed Inmate TOMPKINS' left arm with both hands and was able to force it behind his back as Officer Layshot grabbed the right arm also forcing it to inmate TOMPKINS' back. Officer Layshot placed inmate TOMPKINS in hand cuffs while he continued to resist, kicking Sergeant Thomas on his right and left knee. Officer J. Mitchell grabbed Inmate TOMPKINS' legs with both his hands. Officer Mitchell lost his grip on Inmate TOMPKINS' leg and TOMPKINS kicked him in the left knee. As Correctional Officer Velazquez was placing inmate TOMPKINS in leg restrains, he kicked her in the left hand. Once in leg restraints, inmate TOMPKINS stopped resisting and complied with orders. Responding staff escorted inmate TOMPKINS to a Facility B temporary holding cell pending medical clearance and Ad/Seg placement Officer Layshot was medically cleared and elected to complete his shift. Officers Velazquez, Salazar and Mitchell were referred to an outside facility for further medical attention. CCPOA representative C. Ortiz was notified of this incident. There was no allegations of staff misconduct Sergeant Thomas inadvertently did not have a CDCR 7219 Medical Report completed on him due to focusing on staff's injuries and prioritizing their wellbeing.

(*Id.* at 53).

Plaintiff allegations in his complaint and the excessive force claim arising from those allegations are inconsistent with what he stipulated to in his criminal case. In his complaint and excessive force claim, Plaintiff alleges that Defendants were the aggressors who attacked him;

13

that they struck him with closed fists, kicked him, and stomped on him; and that he begged for help during the incident. This narrative necessarily implies that Defendants "acted unlawfully during the events" at issue, *i.e.*, they used excessive force. *Sanders*, 14 F.4th at 970. But under *Heck*, Plaintiff "cannot stipulate to the lawfulness" of Defendants use of force in the criminal case "and then use the 'very same act' to allege an excessive force claim under § 1983." *Id.* at 972 (citation omitted).

Because the facts that Plaintiff agreed to in his criminal proceedings—that he was the aggressor who attacked Defendants without provocation, that certain Defendants only used their physical strength and holds to subdue him, and that other Defendants used no force at all—are fundamentally inconsistent with his excessive-force allegations in the complaint, he cannot pursue his claim in this case, until his criminal conviction is invalidated.

Accordingly, the Court will recommend that Defendants' motion to dismiss based on the favorable termination rule be granted and that this case be dismissed.

**C. Application of *Heck* to RVR**

As Defendants note, the guilty finding in the RVR for battery on a peace officer is based on the same incident report that Plaintiff stipulated to in his criminal case. (ECF No. 27-1, p. 6; ECF No. 28, pp. 141, 146). And the narrative in the RVR of the events that happened—Plaintiff attacked officers for no reason—aligns with the narrative in the incident report:

> In this case, Inmate TOMPKINS was being transferred to a higher level of care (MHCB) and staff were instructed to escort him. Upon opening the cell door for removal, Inmate TOMPKINS became combative, willfully and unlawfully striking Officer C. Layshot and while being restrained by staff continued his assaultive behavior. During the incident, multiple correctional staff received injuries due to TOMPKINS actions.

(ECF No. 28, p. 140).

Accordingly, like Plaintiff's criminal conviction, his RVR likewise implicates *Heck* because the allegations in the complaint conflict with the guilty finding in the RVR proceedings. Plaintiff is thus barred under the favorable termination rule from pursuing a § 1983 claim for excessive force unless and until the RVR has been invalidated.

The Court notes that Plaintiff argues that *Heck* cannot apply because his 150 days loss

14

of credit from the RVR would not necessarily affect the duration of his sentence of 25 years to life in prison. (ECF No. 37, pp. 6, 14). He invokes caselaw that says when a Plaintiff challenges the validity of an RVR disciplinary proceeding, such a plaintiff must do so in a writ of habeas corpus if success on the challenge would invalidate the RVR. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (finding "allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed [in a prison disciplinary proceeding] . . . not cognizable under § 1983"). Plaintiff correctly points out that, given his sentence of 25 years to life in prison, even if he invalidated the RVR, it would not necessarily affect the duration of his sentence. *See Richson-Bey v. Watrous*, No. 1:21-CV-01482-JLT-GSA (PC), 2023 WL 3956148, at *8 (E.D. Cal. June 12, 2023), *report and recommendation adopted*, 2023 WL 6392782 (E.D. Cal. Oct. 2, 2023) (concluding that *Heck* did not bar a plaintiff's claims when he was serving an indeterminate sentence of 26 years to life in prison). Thus, such a challenge could conceivably proceed in a § 1983 case and would not need to be filed as a petition for writ of habeas corpus.

However, Plaintiff's argument is ultimately unavailing. Notably, Plaintiff's claim of excessive force in this case does not challenge the validity of the RVR, as a matter of due process or otherwise. Thus, even if such a challenge to the RVR could in theory proceed in this case because it would not affect the duration of his sentence, Plaintiff has not brought such a claim in this case. Put another way, success on his one claim for excessive force would be inconsistent with the RVR guilt finding, which has not been expunged and will not be expunged even if Plaintiff succeeds on his excessive-force claim in this case.

But in any event, the inconsistency between Plaintiff's criminal conviction and his excessive-force claims in this case, discussed above, is an independent bar to Plaintiff proceeding with his excessive force claim. As discussed above, Plaintiff cannot pursue his excessive-force claim here as a § 1983 action unless and until the criminal conviction has been expunged, through an appeal or other process.  This is true whether or not Plaintiff's claim also conflicts with the RVR finding, which it also does.

Accordingly, the RVR guilty finding provides another ground to grant Defendants'

motion to dismiss based on the favorable termination rule.

## VI. CONCLUSION AND RECOMMENDATIONS

For the reasons given above, IT IS RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 27) be granted.
2. This case be dismissed, without prejudice to Plaintiff refiling this claim in the event that the criminal conviction and RVR determination of guilt have been invalidated.[3]
3. Defendants' request for judicial notice be granted. (ECF No. 28).
4. Plaintiff's request for judicial notice be granted. (ECF No. 38).
5. The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __May 1, 2024__                    /s/ Erica P. Grosjean
                                          UNITED STATES MAGISTRATE JUDGE

---

[3] While Defendants ask that the case be dismissed with prejudice, the Ninth Circuit has concluded that a *Heck* dismissal is "required to be without prejudice so that [a plaintiff] may reassert his claims if he ever succeeds in invalidating his conviction." *Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995); *see also Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015) (same).